# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51168
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2015

Lyle W. Cayce
Clerk

ERICH KELLY,

Plaintiff - Appellant

v.

COSTCO WHOLESALE CORPORATION,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:12-CV-788

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

This appeal arises from the district court's grant of summary judgment in favor of Costco Wholesale Corporation ("Costco") on Erich Kelly's claim of age discrimination. We AFFIRM the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-51168

## FACTS AND PROCEEDINGS

Erich Kelly was born on January 29, 1958, and worked for Costco between December 2001 and May 2011. He worked as a meat manager from June 2002 to July 2009, but he was demoted when an audit discovered that he falsified paperwork about sanitation procedures. Even though Costco could have terminated Kelly for this offense, instead it demoted him to cashier and gave him a permanent counseling notice. Despite the offense, he was eventually promoted to the position of meat lead, reporting to meat manager Mark Crosson.

About two weeks before Kelly's termination, he asked Costco's Warehouse Manager Dave Romo if he could have help in the meat department while some of his co-workers were out. Kelly claims the following exchange occurred: Romo "[j]ust kind of chuckled. And he [said], 'What, you can't handle it yourself.' And [Kelly responded], 'No I'm not capable man, I'm not no young kid no more.' And [Romo said], 'Well, hell, if you can't handle it, we'll get some young kids that can.'"

Shortly before Kelly's termination, on May 16, 2011, Costco's Texas Regional Vice President Richard Webb noticed that, while the "Texas Region as a whole had increased its profit margins over the previous four reporting periods, the meat department at the Northwest San Antonio warehouse had lost significant ground during the same timeframe," with a 35 percent decrease in profitability. Therefore, on May 19, Costco's Regional Meat Manager Art Lozano performed an unannounced inspection of the meat department where Kelly worked. "During the [inspection], he found numerous violations of Costco policies and standards, including overproducing [meat], failing to use production logs, failure to tenderize meat as required, and failing to trim

2

salmon filets, among other things." Kelly was not working on the day of this inspection.

Following the inspection, Romo and the Assistant Warehouse Manager interviewed the meat department employees, including Kelly. Kelly denied responsibility for the problems with both the meat-trimming and failing to rewrap bloody packages by saying that "[he] wasn't there," because he was not working the day of the inspection. Some of the meat labels, however, showed that the meat had been cut on days that Kelly had worked. Furthermore, one of Kelly's co-workers told managers that he had seen Kelly fail to tenderize meat.

After all of the interviews were completed, Webb considered Kelly's responses as well as his previous demotion and decided to terminate him. Kelly was 53 years old. Webb also terminated meat manager Crosson and two of Kelly's co-workers. Like Kelly, both of his terminated co-workers had suffered prior disciplinary actions. One terminated co-worker was 36 years old. Another co-worker, Art Diaz, was not terminated because "he did not have a prior record of performance and/or disciplinary issues." Diaz was 47 years old. Further, Webb was 56 years old when he made the decision to terminate Kelly.

In July 2012, Kelly and the other terminated employees filed a lawsuit in Bexar County District Court. Costco removed the case to federal court on the basis of complete diversity and filed a motion for summary judgment, which the district court granted. Only Kelly has appealed.

## STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court." *Berquist v. Washington Mut. Bank,* 500 F.3d 344, 348 (5th Cir. 2007). A summary judgment motion should be granted if the movant shows that there is "no

No. 14-51168

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 348-49. When considering whether there is a genuine issue as to a material fact, all facts "must be reviewed in the light most favorable to the nonmoving party." *Id.* at 349. We may affirm summary judgment on any ground supported by the record, even a ground that is distinct from the one on which the district court relied. *Id.*; *Lifecare Hosp., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

## DISCUSSION

The Texas Commission on Human Rights Act prohibits employment discrimination against individuals "40 years of age or older." TEX. LAB. CODE ANN. § 21.101. By adopting the statute, the Legislature "intended to correlate state law with federal law in employment discrimination cases." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)). The Texas Supreme Court thus looks to federal law when interpreting the Act's provisions. *AutoZone*, 272 S.W.3d at 592; *see Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

A plaintiff can establish age discrimination through direct or circumstantial evidence. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). If direct evidence of discrimination exists, no further evidence is required. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121-22 (1985); *Berquist*, 500 F.3d at 349. Kelly, however, has elected to rely on circumstantial evidence. Therefore, we must consider the evidence using the test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first demonstrate a prima facie case of age discrimination. 411 U.S. at 802. Here, we assume without deciding that Kelly meets his initial burden.

No. 14-51168

Once a prima facie case is raised, the burden shifts to Costco "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *Id.* at 802. This is a burden of production, not persuasion, and it involves no credibility assessments. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). Here, Costco has satisfied its burden by producing evidence that it fired Kelly because of problems in his department and his disciplinary history. Therefore, the burden shifts back to Kelly, who must show that Costco's articulated reasons are pretext for age discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

Kelly's only evidence of pretext is that Romo, the Warehouse Manager, once said that he would hire "young kids" if Kelly could not do his job.[1] Kelly produced no evidence of disparate treatment.

When allegedly discriminatory remarks are offered as circumstantial evidence "alongside other alleged discriminatory conduct," pretext is analyzed using a two-part test.[2] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). Under this test, "[t]he remark must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse

---

[1] Because Romo was not Costco's ultimate decision maker, it is unclear whether Romo's alleged discriminatory animus could be attributed to Costco. Typically, courts attribute a subordinate's alleged discriminatory animus to an employer through a so-called "cat's paw" analysis. In an unpublished opinion, we have expressed doubt as to whether cat's paw analysis applies to the Age Discrimination in Employment Act, *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 922 (5th Cir. 2012), the federal analogue to the state law at issue here. But because we conclude that Kelly has failed to show that Romo was motivated by discriminatory animus, we need not resolve whether cat's paw analysis is available here.

[2] *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 2003), *abrogated on other grounds by Reeves*, 530 U.S. at 134, presents a four-part test for determining whether remarks are sufficient to show age discrimination. But *Brown*'s four-part test applies only when "a plaintiff offers remarks as direct evidence." *Reed v. Neopost USA, Inc.*, 701 F.3d 434 (5th Cir. 2012).

employment action or by a person with influence or leverage over the formal decision maker." *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003).

Kelly fails the *Reed* test at the outset because he has not identified any alleged discriminatory conduct besides Romo's comment about "young kids." Kelly produced no other evidence that he was discriminated against because of his age; in fact, one meat-department employee who was only 36 years old was also dismissed, while another who was 47 years old kept his job. The logical inference is that age was not a factor. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) (reversing ADEA plaintiff's jury verdict after considering, among other things, that an older employee was retained while other employees under the age of 40 were terminated). Moreover, Webb, the man who decided to terminate Kelly, was three years older than him at the time. Webb's membership in the same protected class as Kelly bolsters the inference that age discrimination was not the reason for his termination. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 2003), *abrogated on other grounds by Reeves*, 530 U.S. at 134 (stating that, since the 58-year-old employee was fired by his 60-year-old employer, there is an inference that "age discrimination was not the motive"). Indeed, Kelly does not argue that he produced any affirmative evidence of pretext other than Romo's statement. Moreover, the court has consistently found that stray remarks are not enough to demonstrate discriminatory animus, and nothing indicates that Romo's comment was anything other than a stray remark. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("[A]s we have held on several occasions, a mere 'stray remark' is insufficient to establish age discrimination[.]"); *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 10-11 (5th Cir. 2009) ("[A] comment is not evidence of discrimination if it is the sole proof of pretext[.]").

No. 14-51168

Even assuming that we could find pretext based on remarks alone, Romo's statement fails *Reed*'s two-part test. Again, the remark by Kelly's supervisor, Romo, was: "if you can't handle it, we'll get some young kids that can." In context, this statement is not evidence of discriminatory animus. Romo was responding in kind to a topic that Kelly himself brought up when he stated that he was "no young kid anymore" and thus could not do the work. Romo can hardly be taken to task for discussing age when Kelly himself raised it as an excuse for his inability to perform his duties. Further, Romo made this remark immediately after Kelly asked for increased staffing in the meat department because of impending absences. It is equally likely that Romo meant that he was going to bring in some younger employees to help, instead of replace, the current employees. *Cf. Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (finding that management's goal to "identify ... younger managers ... for promotion to senior management over the next 5+ years, ultimately replacing senior management" was not direct evidence of discrimination because it was not clear that senior managers would be fired to make room for younger ones, given that senior managers could simply be replaced as they retired). Also, Romo's inclusion in the protected class, as a 51-year-old man, weighs against a finding of discriminatory animus. *See Brown*, 82 F.3d at 658.

Kelly also fails *Reed*'s second prong because he has not produced any evidence that Romo had "influence or leverage over" Webb, the ultimate decision-maker. *Laxton*, 333 F.3d at 583. The district court concluded that, because Romo "participated in the interviews on which Webb largely based his termination decisions, and Webb does not appear to have investigated the reports independently, Romo's potential age-based animus might be imputed to Webb." But, even though Romo was involved in interviewing Kelly, nothing

7

indicates that Romo provided Webb with recommendations on whom to terminate or that his report of Kelly's interview was biased. Thus, Kelly has not demonstrated that Romo had "influence or leverage" over Webb.

Kelly also contends that Costco's stated reasons for terminating him were untrue. A plaintiff can survive summary judgment if he shows that his employer's reason for termination is "false or unworthy of credence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) (quoting *Laxton*, 333 F.3d at 578) (internal quotation marks omitted); *see Reeves*, 530 U.S. at 143. Kelly claims that, when he was demoted, he was told by an unidentified person that "the notice [of his cause for termination] would only be in his file for six months." But Kelly's counseling notice, which he signed, indicated that it would be permanent. Regardless, even if the notice was removed from his file, nothing prohibits an employer from considering previous discipline or bad behavior in making termination decisions. Thus, Costco's consideration of the discipline is worthy of credence.

Kelly also claims that his failure to deny the meat trimming and package-rewrapping issues does not mean that he knew about or was responsible for those issues. Kelly states that he did not deny the existence of those issues because he was not working on the day of the inspection. But simply because he was not working on that particular day does not mean that he did not contribute to the poor presentation of the meat. As Kelly confirms in his deposition, meat has a three-day shelf life. Some of the meat had labels stating that it was cut before May 19, and Kelly worked on May 18. Basing the termination decision in part on Kelly's involvement in preparing that meat is thus worthy of credence.

Kelly critiques the fairness and correctness of the decision to terminate him. But fairness and correctness do not bear on pretext. Anti-discrimination

laws were not intended to permit the courts to re-examine employment decisions. *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988). The laws "do not require an employer to make proper decisions, only non-[discriminatory] ones." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.