# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60011

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2019

Lyle W. Cayce
Clerk

ROBERT MCMICHAEL,

      Plaintiff - Appellant

v.

TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED;
TRANSOCEAN RIGP DCL, L.L.C.; TRANSOCEAN OFFSHORE USA,
INCORPORATED,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

CARL E. STEWART, Chief Judge:

Between 2014 and 2018, the defendants, Transocean Offshore Deepwater et al., reduced their offshore fleet by 59%. While reducing their fleet, Transocean fired the plaintiff, Robert McMichael, along with over 7,300 other employees. McMichael claims he was fired because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"). Transocean argues that they fired him for other reasons, just like the thousands of other employees they let go in the same period.

The district court agreed with Transocean, granting their motion for summary judgment. According to the district court, McMichael failed to raise

No. 19-60011

a genuine question of material fact about Transocean's reasons for firing him. The sole issue on appeal is whether McMichael presented enough evidence to show that Transocean's reasons for firing him were pretext for age discrimination. Because we agree that McMichael failed to raise a genuine issue of material fact, we AFFIRM.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

**A. Factual Background**

In 2001, Transocean hired McMichael as a Driller I, assigning him to an offshore drilling rig. He was 46 years old. Over the next eight years, he worked as a driller and toolpusher on various rigs, earning several promotions and pay raises.[1] Then, in 2009, Transocean assigned him to a rig called the Discoverer Clear Leader ("DCL"). He worked on the DCL until Transocean fired him in April of 2015. He was 59 years old.

McMichael's firing came in the middle of a large downturn in the oil and gas industry. From 2014 until July of 2018, Transocean reduced its offshore fleet by 44 rigs. The reduction in rigs also led to a large reduction in workforce. During this period, Transocean fired 7,320 employees. Transocean also cut almost half of its toolpusher workforce. In less than two years, they laid off 25 toolpushers—48% of all toolpushers.

In early 2015, when McMichael was fired, Transocean "cold stacked" six drilling rigs, reducing the employees on those rigs from 989 to 0. The DCL was one of those rigs. Transocean fired 80 employees from the DCL before eventually taking the entire rig out of service in November of 2017. Transocean fired all but one toolpusher from the DCL.

---

[1] A toolpusher is a location supervisor for the drilling contractor. Toolpushers are typically senior, experienced drillers, and their duties are largely administrative.

No. 19-60011

The task of managing the workforce reduction fell on Transocean's HR Department, which devised and implemented a system for the project. The system was called the "high-grading process."

At a high level, the high-grading process ranked employees so that Transocean could retain its top talent. Higher-ranked employees were more likely to keep their jobs; lower-ranked employees were more likely to lose theirs.

At a more granular level, the high-grading process had three basic parameters—(1) performance, (2) ranking, and (3) potential. Performance is a score based on the employee's most recent performance appraisal, which has two components: the Total Performance Score and the Appraisal Score. An employee can receive one of five possible Total Performance Scores: 1 being Unsatisfactory, 2 being Conditional, 3 being Fully Successful, 4 being Superior, and 5 being Outstanding. These scores are then converted into a percentage: Unsatisfactory equaling 40%, Conditional equaling 60%, Fully Successful equaling 80%, Superior equaling 100%, and Outstanding equaling 120%.

The Appraisal Score is based on the total number of points an employee scores on his most recent performance appraisal. Reviewers assign employees points in response to twelve different questions. For example, reviewers must determine each employee's "Knowledge of Tasks & Operation," "Delegating Authority and Responsibility," and "Professionalism." Each question is worth six possible points, making the maximum score 72 points. Transocean then divides the employee's actual score by 72, producing the Appraisal Score. They then average the Total Performance Score with the Appraisal Score to produce the performance metric. So, for example, if an employee receives a Total Performance Score of Superior (100%) and receives 62 out of 72 points on the Appraisal Score (86%), he will receive a performance score of 93%.

3

No. 19-60011

The second parameter—ranking—is set by the rig manager.  A rig manager sets an employee's ranking by comparing him to all other employees with the same job title on the rig the manager oversees.  For example, if a manager oversees five toolpushers, he must rank them from first to fifth.  After assigning the employee a ranking, the manager combines the ranking with "additional performance-related factors" to produce the employee's ranking score, which is expressed as a percentage.  .

Rig managers also assign the final parameter—potential.  Potential refers to the employee's potential for promotion to the next position or higher.  If the manager thinks the employee has no potential for promotion, he assigns the employee a score of zero, and the employee receives a potential percentage score of 60%.  If the manager assigns a potential score of one, the employee receives a potential percentage score of 80%.  A score of two or higher earns the employee a potential percentage score of 100%.

After setting these three measures, Transocean averages them to determine the employee's "Total Score."  Because these rankings are difficult to apply across rigs, given that each rig manager oversees only a handful of toolpushers, the HR Department noted that they are merely meant to facilitate conversations between the HR Department and rig managers, who retain ultimate responsibility for the lay-off decisions.

McMichael's last performance appraisal came in 2014.  Gary Mosley and Robert Blansett completed the appraisal and assigned McMichael a Total Performance Score of 3 "Fully Successful."  This earned him a score of 80%.  McMichael scored 61% on the Appraisal Score, earning 44 out of 72 possible points.  Averaging these two scores, his final performance score was 71%.

After the performance appraisal, Robert Kennedy, the rig manager, assigned McMichael his ranking and potential scores.  He ranked McMichael fourth out of the four toolpushers under his supervision, which translated to

4

No. 19-60011

25%. He also assigned McMichael a 0 for potential, which earned him a potential score of 60%. Kennedy assigned McMichael these low scores because (1) he spent more time in the toolpusher office than he should have; (2) he did not have great leadership skills; (3) his computer skills were weak; (4) he did not interact well with customers; and (5) he did not have strong planning skills. His final score was 52%. After assigning ranking and potential scores, Kennedy discussed McMichael with the HR Department and made the decision to fire him on April 25, 2015. Kennedy did not know McMichael's age when he fired him.

After firing McMichael, Kennedy was responsible for hiring his replacement. He chose Jody Eckert. Eckert was 49 years old and received a rating of 4 "Superior" on his most recent performance appraisal, earning him a Total Performance Score of 100%.[2] He earned an Appraisal Score of 67%, receiving 48 out of 72 possible points. Eckert's final performance score was 84% when rounded up. His manager also assigned him a ranking of 33%, and his potential score was 60%. The average of Mr. Eckert's performance, ranking, and potential scores is 59%.[3] Eckert was fired in September of 2016 as part of ongoing workforce reductions.

## B. Procedural History

McMichael sued Transocean in September of 2016, alleging, among other things, that Transocean discriminated against him based on his age. After

---

[2] Kennedy did not know Eckert's age when he selected him.

[3] Despite the scores above, a performance rating chart in the record shows McMichael as having a total high-grade score of 71%. Transocean explains that this number reflects only McMichael's performance score, not his total high-grade score of 52%. Because Transocean cold stacked six rigs in early 2015, they ranked and terminated many employees quickly, leading to a typographical error on the performance rating chart.

written discovery and depositions, Transocean moved for summary judgment in July of 2018. The district court granted the motion.

The district court first assumed that McMichael could make out a prima facie case of age discrimination. The court then affirmed a reduction in force was a legitimate, nondiscriminatory reason for terminating McMichael. The bulk of the court's opinion dealt with whether Transocean's proffered reasons for firing McMichael were pretextual.

According to the court, McMichael could not call into question Transocean's reason for firing him. While McMichael was replaced by someone younger, he did not show that his replacement was less qualified. All that McMichael showed was that "perhaps Transocean made some mistake in their scoring." And such a mistake is not enough to overcome summary judgment.

The court also held that statements made by Robert Owen—a former Offshore Installation Manager on the DCL—did not indicate any discriminatory motive. And other factors showed a lack of discriminatory intent.

## II. DISCUSSION

This court reviews a district court's grant of summary judgment de novo. *E.E.O.C. v. WC & M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences drawn in its favor. *WC & M*, 496 F.3d at 397.

6

No. 19-60011

Under the ADEA, an employer cannot "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308–09 (5th Cir. 2004).  To establish an ADEA claim, the plaintiff must show that his age was the "but-for" cause of his termination—proving that age was a "motivating factor" for the decision is not enough. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (holding that a "plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision"); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) ("[T]he Supreme Court rejected the application of Title VII's 'motivating factor' standard to ADEA cases." (citing *Gross*, 557 U.S. at 173–78)).  A plaintiff may prove that age was a but-for cause of his firing with direct or indirect evidence. *Kilgore v. Brookeland Indep. Sch. Dist.*, 538 F. App'x 473, 475–76 (5th Cir. 2013) (per curiam) (unpublished); *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

"Direct evidence of discrimination . . . prove[s] the existence of a fact . . . without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).  Most often, direct evidence takes the form of a discriminatory statement directly connected to the plaintiff's discharge.  *See Moss*, 610 F.3d at 929.

If the plaintiff cannot prove his case with direct evidence of discriminatory motive, he can still rely on indirect evidence.  When confronting indirect evidence, courts use the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504 (5th Cir. 1988).  Under this framework, a plaintiff must first "put forth a prima facie case." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).  After making out a prima facie case, "the burden

shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Id.* If the employer articulates such a reason, the plaintiff must rebut the employer's purported explanation by showing that the reason given is merely pretextual. *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010).

Here, the parties agree that McMichael has made out a prima facie case of employment discrimination.[4] The parties disagree on the next two steps. First, McMichael argues that Transocean did not provide a legitimate, non-discriminatory reason for firing him. McMichael's argument here is frivolous. Transocean's proffered reason for firing McMichael was a broad reduction in force. This court has repeatedly held that a reduction in force is a legitimate reason for firing someone. *See Kilgore*, 538 F. App'x at 477 (holding that "[a] reduction in force is a legitimate, nondiscriminatory reason for discharge"); *Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 269–70 (5th Cir. 2013) (same); *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (same).

Second, McMichael argues that any reasons Transocean provided were mere pretext for discrimination. This disagreement is the heart of the case, and it centers on the final step of the burden-shifting framework: whether Transocean's reasons for firing McMichael were pretext for age discrimination.

---

[4] In a typical ADEA case, the plaintiff must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Bodenheimer*, 5 F.3d at 957.

In a reduction-in-force case, a party makes out a prima facie case of age discrimination by showing "(1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991)).

At summary judgment, McMichael must offer enough evidence to raise a genuine question of fact regarding Transocean's reasons for firing him.

To show pretext, a plaintiff must present enough evidence for a reasonable jury to believe that Transocean's "reasons are pretexts for unlawful discrimination." *Bienkowski*, 851 F.2d at 1505. A plaintiff can do so by showing that: (1) "a discriminatory reason more likely motivated" the employer, *id.*; (2) the employer's "reason is unworthy of credence," *id.*; or (3) he "is 'clearly better qualified' than the person selected for the position," *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). "The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision." *Bienkowski*, 851 F.2d at 1505.

To undermine Transocean's reasons for firing him, McMichael points to three types of evidence, all of which, he argues, show a discriminatory motive for firing him: (1) allegedly discriminatory comments, (2) hiring a younger, less-qualified candidate, and (3) the way Transocean applied the high-grading process to McMichael.

## A. Discriminatory Comments

A plaintiff can show pretext and discriminatory motive by pointing to age-related comments made by a person in charge of firing. A plaintiff can use these comments in both direct and indirect evidence cases. In direct evidence cases, comments must meet a demanding standard because the plaintiff relies on them "to prove the entire case of discrimination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015). For age-related comments to show pretext in a direct evidence case, they must be more than "stray remarks." *Tex. Instruments*, 100 F.3d at 1181 ("This court has repeatedly held that 'stray remarks' do not demonstrate age discrimination."). To rise above the level of a stray remark, an age-related comment must "be direct and

unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Id.* More specifically, for a comment to prove age discrimination it must be "1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." *Moss*, 610 F.3d at 929 (internal quotation marks omitted) (quoting *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 683 (5th Cir. 2001).

While the plaintiff must connect age-related comments to a person with power over the firing decision, the plaintiff can satisfy this requirement by showing that the speaker "is in a position to influence the decision." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003). Similarly, age-related comments "'are appropriately taken into account' . . . even where the comment is not in the direct context of the termination." *Id.* (*citing Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 (5th Cir. 2000)). If comments do not meet this standard, then they cannot defeat summary judgment. *See Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) ("Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." (citations omitted)).

In indirect evidence cases, courts apply a less demanding standard because "the discriminatory remarks are just one ingredient in the overall evidentiary mix." *Goudeau*, 793 F.3d at 475 (holding that discriminatory remarks are relevant at the pretext stage and a less "demanding test applies"). Under this less demanding standard, the plaintiff must show that the comments involve "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Squyres*

*v. Heico Cos., L.L.C.*, 782 F.3d 224, 236 (5th Cir. 2015) (quoting *Reed*, 701 F.3d at 441).

Here, McMichael first attempts to overcome summary judgment with statements made by Robert Owen, as Offshore Installation Manager on the DCL.  According to McMichael, Owen told him that he "had nothing to worry about" because he could receive his "pension without receiving a financial penalty from the IRS."  This statement falls short under both the direct and indirect evidence standards because (1) it does not reflect any discriminatory animus, and (2) Owen did not have any influence over the decision to terminate McMichael.

Courts typically only find a statement to be evidence of age discrimination in two situations.  First, courts will find evidence of age discrimination where a statement references age in a derogatory or stereotypical way.  *See, e.g.*, *Rachid*, 376 F.3d at 315 (finding evidence of age discrimination where the employer told the plaintiff ". . . you're too old").  Second, courts will find evidence of age discrimination where the employer's statement shows a desire to replace older employees with younger ones.  *See, e.g.*, *Palasota*, 342 F.3d at 577–78 (finding sufficient evidence to sustain a jury verdict where the employer stated that the plaintiff's "sales techniques were out of the 'old school' of selling"; commented that "there was a 'graying of the sales force'" and the employer needed "to find a way to get through it;" and recommended severance packages for fourteen named employees, all of whom were specifically identified as over fifty years of age, to create "the flexibility to bring on some new players").  Neither situation is present here.

Commenting on McMichael's eligibility for retirement does not reference age in a derogatory or stereotypical way.  Nor does it show a desire to replace older employees with younger ones.  It also does not imply that McMichael's

age was the reason he was fired, especially in the context of a reduction in force. The case law supports this interpretation.

This court previously held that nearly the exact same statement did not directly show discriminatory motive. *Kilgore*, 538 F. App'x at 476. In *Kilgore*, this court held that the plaintiff failed to show discriminatory motive even though his boss said that he was "eligible for retirement." *Id.* ("We agree with Brookeland and the district court that the superintendent's alleged comment that Kilgore was "eligible for retirement" is not direct evidence from which a reasonable jury could conclude that Brookeland terminated Kilgore because of his age." (emphasis added)). Such a statement, the court held, "did not imply" that his eligibility "was the reason for discharge." *Id.* (citing *Tex. Instruments*, 100 F.3d at 1181). It "simply recognized a fact concerning" the plaintiff's eligibility. *Id.* This benign interpretation of the statement was also "consistent with the context in which it was allegedly made," since "it was natural for the [decisionmaker] to inform [the plaintiff] of the benefits to which he was entitled upon his termination." *Id.*

Like in *Kilgore*, the speaker merely informed McMichael of his eligibility for retirement benefits. The statement did not reflect any stereotypes about age, evince a desire to replace older employees with younger ones, or suggest that McMichael was fired for his age. In the context of a reduction in force, it was natural for employees to discuss benefits available if they were terminated. And McMichael has not produced any evidence suggesting an alternative interpretation.

McMichael also failed to connect this statement to a person with influence over the decision to fire him. While McMichael does not need to connect this statement to the "formal decision maker," he must show that the speaker is "in a position to influence the decision." *Palasota*, 342 F.3d at 578. But McMichael shows the exact opposite—he admits that Owen "was no longer

the [Offshore Installation Manager] on the [DCL] at the time" he was fired. And no other evidence shows, or even suggests, that Owen had any influence over the decision to terminate McMichael.

## B. Hiring a Less Qualified Candidate

Another way that a plaintiff can show pretext is by pointing out that the employer replaced the plaintiff with a younger, "clearly less qualified" employee. *Tex. Instruments*, 100 F.3d at 1181; *see also Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992) ("[A] plaintiff can take his case to a jury with evidence that he was clearly better qualified than younger employees who were retained." (citing *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 647 (5th Cir. 1985)). The "bar," however, "is set high for this kind of evidence." *Moss*, 610 F.3d at 922–23 (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)). A plaintiff cannot satisfy his burden by showing a large discrepancy in age. *See Inmon v. Mueller Copper Tube Co., Inc.*, 757 F. App'x 376, 382 (5th Cir. 2019) (unpublished) ("In sum, we hold that a significant difference in age, standing alone, is insufficient evidence of pretext . . . ."). Nor can the plaintiff satisfy his burden by showing that he is "merely better than or as qualified" as his replacement. *Moss*, 610 F.3d at 923 (quoting *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)). Instead, he must show that his replacement, if any, is clearly less qualified.

To carry this heavy burden, a plaintiff must show that "the qualifications are so widely disparate that no reasonable employer would have made the same decision." *Moss*, 610 F.3d at 923 (citing *Celestine*, 266 F.3d at 357). Differently put, the plaintiff must submit "evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

question."' *Id.* (citing *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).

Here, McMichael does not attempt to show that Eckert was clearly less qualified. He doesn't challenge the high-grade system score assigned to Eckert, and he doesn't directly challenge his high-grade score with facts showing that he was so qualified that Transocean should not have fired him. Notably, McMichael never addresses Eckert's performance rating of 84%, which is higher than his own performance rating of 71%. Even if he did directly challenge his high-grade score, his own qualifications are less relevant in a reduction-in-force case. *See Tex. Instruments*, 100 F.3d at 1181 ("In the context of a reduction in force . . . the fact that an employee is qualified for his job is less relevant—some employees may have to be let go despite competent performance.").

## C. Departing from Procedure

A plaintiff can also show pretext by showing a departure from standard procedure. But mere deviations from policy, or a disagreement about how to apply company policy, do not show pretext. *See Campbell v. Zayo Grp., L.L.C.*, 656 F. App'x 711, 715 (5th Cir. 2016) (per curiam) (unpublished) (holding that "mere disagreement with [the employer's] application of the [reduction-in-force] policy, without more, does not provide substantial evidence of pretext"). The ADEA does not "protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Moss*, 610 F.3d at 926 (quoting *Bienkowski*, 851 F.2d at 1507–08). Plaintiffs, therefore, must connect a departure from or misapplication of procedure to a discriminatory motive—an employer's "disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989).

Here, McMichael also argues that Transocean inconsistently applied the high-grading process to him.  The main thrust of McMichael's argument centers on a discrepancy in the evidence.  On a chart showing all the toolpushers who were fired and retained, McMichael received a higher performance score than Eckert.  Importantly, Eckert is younger and, according to McMichael, less qualified than him.  McMichael argues that these two facts show that Transocean did not fire him because of his performance review—they fired him because of his age.

Transocean argues that the chart does not reflect McMichael's final high-grading score—it only reflects his score on the performance parameter.  Eckert's score, on the other hand, reflects all three parameters: performance, ranking, and potential.  The chart, in other words, is incomplete because Transocean made a simple scrivener's error.  This error is understandable, they argue, because they cold stacked six rigs in early 2015, forcing them to rank and terminate a selection of 989 employees quickly.

McMichael's argument is unconvincing.  While a departure from procedure can show discriminatory motive, McMichael does not give any reasons to doubt Transocean's explanation for the discrepancy on the rating chart, which makes the difference in the chart look like an accidental departure from procedure.  This court, however, does not find discriminatory motive merely because an employer misapplies a reduction-in-force policy.  *Campbell*, 656 F. App'x at 715 (holding that "mere disagreement with [the employer's] application of the [reduction-in-force] policy, without more, does not provide substantial evidence of pretext"); *Tex. Instruments*, 100 F.3d at 1182 (finding no pretext where employer departed from original "layoff policy" in favor of a new one); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993) (rejecting a claim based only on "[p]roof that an employer did not follow correct or standard procedures in the termination or demotion of an employee").  Even if

a plaintiff can show that an employer consciously disregarded "its own hiring system," that showing, on its own, does not "conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." *Risher*, 889 F.2d at 597.

## D. Additional Factors

Beyond these shortcomings, two other factors further undercut McMichael's arguments. First, on numerous occasions, this court has held that discrimination is less likely when the supervisor is in the same protected class as the plaintiff. *See Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 783 (5th Cir. 2015) ("[The plaintiff's] membership in the same protected class as [the supervisor] bolsters the inference that age discrimination was not the reason for his termination."); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), *abrogated on other grounds by Reeves*, 530 U.S. at 134 (holding that, since the 58-year-old plaintiff was fired by his 60-year-old employer, there was an inference that "age discrimination was not the motive").

Two of the three people who rated and fired McMichael—Mosley and Kennedy—were both in the same protected class. Mosley was 57 years old, and Kennedy was 51 years old. Their ages make discrimination less likely.

Second, Transocean fired numerous employees who were younger and more qualified than McMichael. This court has held before that age discrimination is less likely when the employer retains other older employees and fires younger ones. *Kelly*, 632 F. App'x at 783 (noting it was unlikely plaintiff was discriminated against when "one meat-department employee who was only 36 years old was also dismissed, while another who was 47 years old kept his job"); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) (reversing ADEA plaintiff's jury verdict even though an older employee was retained while other employees under the age of 40 were terminated). In

such situations, "[t]he logical inference is that age was not a factor." *Kelly*, 632 F. App'x at 783.

Here, no evidence shows that age was a factor in any of Transocean's firing decisions. Transocean fired numerous employees who were younger and more qualified than McMichael. For example, Transocean fired one employee who was 38 years old and had a high-grade score of 92%. And on the DCL, Transocean retained only one toolpusher. While he was younger than McMichael at 49 years old, he scored well above McMichael's 71% (or 59%) with a total high-grade score of 85%. Besides McMichael, the other two toolpushers fired from the DCL were both younger than the one retained toolpusher, but both received lower high-grade scores—one is 48 years old and scored 72%, the other is 35 years old and scored 71%. This evidence suggests that Kennedy retained the most qualified employees.

A more fundamental problem is that all but one of the toolpushers on the DCL, including Eckert, were terminated. And the one toolpusher they retained was clearly more qualified than McMichael, and he was not the youngest toolpusher on the rig. McMichael failed to meet the high burden of showing that Transocean chose to discriminate against him even though they were firing almost every toolpusher on the DCL anyways. The most reasonable explanation is the one Transocean gave: a massive reduction in force due to a downturn in the oil and gas industry.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.