# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2022

Lyle W. Cayce
Clerk

No. 21-30438

William B. Lawson,

*Plaintiff—Appellant*,

*versus*

Excel Contractors, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:19-CV-834

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.
Per Curiam:*

William Lawson worked as a welding inspector for Excel Contractors, L.L.C., from April 2016 until August 2017, when he took a two-week leave of absence after experiencing heart problems. During Lawson's leave, Excel hired someone to temporarily replace him and promoted one of his peers; both individuals were substantially younger than Lawson. When Lawson

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

returned to work, Excel assigned him to office tasks; he had previously worked primarily in the field. Excel terminated Lawson four months later, citing the need to downsize. However, Excel did not terminate Lawson's replacement, who had transitioned to permanent work, or his recently promoted peer. Lawson filed this suit five months later. He alleged that, by failing to promote or retain him, Excel unlawfully discriminated against him because of his age and disability and retaliated against him for taking leave. Excel moved for summary judgment, which the district court granted. Lawson timely appeals.

For the following reasons, we AFFIRM the district court.

## I. Facts & Procedural History

Lawson is a certified welding inspector who is in his sixties. He started working for Excel in April 2016, after Excel acquired Lawson's previous employer, Ron Williams Construction. Excel is a Baton Rouge–based construction company that provides pipefitting and welding services for a varying number of new and maintenance contracts. Excel hired Lawson as a Quality Assurance/Quality Control ("QA/QC") Inspector. At the time, Excel employed only one other QA/QC Inspector, George "Gene" Anderson, who also came from Ron Williams Construction. Anderson, who is twenty years younger than Lawson, oversaw Excel's pipe fabrication shop. Lawson, in contrast, floated from project to project while also supervising Excel's Firestone maintenance contract. Lawson and Anderson worked under the supervision of a QA/QC Manager, until that person resigned in June 2017. Allegedly, rather than promote someone to replace the QA/QC Manager, Excel gave Lawson and Anderson both raises and told them that they would be equal in rank going forward.

On August 21, 2017, Lawson became dizzy and started feeling chest pains while on a jobsite. He went home to recover and see a doctor. The next

day, Lawson saw his family physician, who referred him to a cardiologist. The cardiologist conducted an angiogram on Lawson, revealing some arterial blockage that the cardiologist described as "pretty much normal" for someone of Lawson's age and mobility. The cardiologist prescribed Lawson statin, increased the dosage of his blood pressure medicine, and cleared him to work beginning the first week of September. Lawson subsequently received a second return-to-work slip from Excel's company physician. Both the cardiologist and company physician cleared Lawson's return without restriction. He returned to work at Excel on September 6, 2017.

Excel made some changes while Lawson was out. Within a few days of Lawson leaving work, Excel hired David Currie to temporarily replace him as the QA/QC Inspector at its Westlake Petrochem project. Allegedly, that project temporarily shut down shortly after Excel hired Currie, meaning Currie mostly worked in the office until Lawson returned. When Lawson did return, Excel retained Currie and transferred him to its Indorama project. Currie is seventeen years younger than Lawson.

Meanwhile, sometime in August 2017, Excel promoted Anderson to the recently vacated QA/QC Manager position, effective September 1, 2017. Excel says that it selected Anderson for the position because he had more seniority within the organization: Anderson began working for Ron Williams Construction, which Excel acquired, several years before Lawson. Additionally, Lawson was having trouble completing critical paperwork for the Firestone contract in a timely fashion whereas Anderson was current on his work. Lawson alleges, however, that he was more qualified for the promotion than Anderson. Although Anderson had worked as a QA/QC Inspector for nearly twenty years, Lawson had worked in the industry longer than Anderson and had once been Anderson's interim supervisor at Ron Williams Construction.

No. 21-30438

Upon his return to work, Lawson completed paperwork related to winding down the Firestone contract, which Excel had recently lost. As noted above, Lawson had mostly worked in the field before this change. Although Lawson also did some work for the Westlake Petrochem project, which had resumed, that project shut down again soon after he returned. As a result, Lawson stayed in the office closing out the Firestone contract, which he completed in January.

Around the same time, Excel's work started drying up in southwest Louisiana, where Lawson was based. Given the nature of Excel's business, it regularly increases and decreases its workforce to account for fluctuating market conditions. In January 2018, Excel submitted Lawson's resume in connection with a "seven figure bid" for the proposed Juniper construction project. If Excel won the project, it would have chosen Lawson as its lead QA/QC Inspector. But Excel was not selected, causing it to consider Lawson for termination under an ongoing workforce reduction once he closed the Firestone project. On January 25, 2018, less than two hours after he completed the Firestone project, Excel terminated Lawson. In the six months preceding Lawson's termination, Excel laid off 564 employees, 64 percent of whom were under the age of forty. Although Excel did not fire Anderson or Currie during this downsizing, Anderson resigned in February 2018 and Currie resigned in March 2018. Excel did not fire Currie because it had submitted his resume in connection with its bid for the smaller Juniper planning project, which it still hoped to win.

After exhausting his administrative remedies, Lawson sued Excel in federal court, asserting claims under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Family and Medical Leave Act ("FMLA"). Excel moved for summary judgment. The district court granted Excel's motion and entered final judgment.

## II. Standard of Review

This court reviews orders granting summary judgment de novo. *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016). "Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). The court "must view the evidence in the light most favorable to the non-moving party, drawing 'all justifiable inferences . . . in the non-movant's favor.'" *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008)).

## III. Discussion

Lawson challenges the district court's dismissal of his claims, contending that he proffered enough evidence to overcome summary judgment and that the district court misapplied the law. We address his arguments below.

### A. Age Discrimination

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, the plaintiff must show that his age was the 'but-for' cause of his termination—proving that age was a 'motivating factor' for the decision is not enough." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Gross v. FBL Fin. Servs., Inc.*,

557 U.S. 167, 180 (2009)). "A plaintiff may prove that age was a but-for cause of his firing with direct or indirect evidence." *McMichael*, 934 F.3d at 455.

Lawson relies on indirect evidence to support his age discrimination claim. Courts evaluate indirect evidence of discrimination using the *McDonnell Douglas* burden-shifting framework. *Id.* at 456 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). This requires a plaintiff to first establish a prima facie case of discrimination. *McMichael*, 934 F.3d at 456. To do so under the ADEA, a plaintiff must show that he (1) suffered an adverse employment action; (2) "was qualified for the position"; (3) belonged to the protected age group at the time of the discharge; and (4) was either "replaced by someone younger," "replaced by someone outside the protected class," or "otherwise discharged because of his age." *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 600 (5th Cir. 2015), *as revised* (Mar. 22, 2016) (citing *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

If the plaintiff makes a prima facie case, then "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). Assuming the employer articulates a non-discriminatory reason, "the plaintiff must rebut the employer's purported explanation by showing that the reason given is merely pretextual." *McMichael*, 934 F.3d at 456. A plaintiff can establish pretext "by showing that: (1) 'a discriminatory reason more likely motivated' the employer; (2) the employer's 'reason is unworthy of credence'; or (3) he 'is "clearly better qualified" than the person selected for the position.'" *Id.* at 457 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir. 1988) and *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007)). It is the plaintiff's burden to present enough evidence "for a reasonable jury to believe that" the employer's "reasons are pretexts for unlawful discrimination." *McMichael*, 934 F.3d at 456–57 (quoting *Bienkowski*, 851 F.2d at 1507).

No. 21-30438

Lawson brought ADEA claims stemming from Excel's decisions to promote Anderson and retain Currie. The district court implicitly concluded that Lawson had established a prima facie case of age discrimination. It held that Lawson had failed to rebut Excel's evidence of legitimate, nondiscriminatory reasons for promoting Anderson and terminating Lawson. Specifically, Excel asserted that it promoted Anderson because Lawson was behind on closing out the Firestone contract and that it terminated Lawson pursuant to a lawful reduction in force. Excel also argued that Lawson was not better qualified for the promotion than Anderson.

On appeal, Lawson maintains that the district court improperly limited its pretext analysis to whether he was "clearly better qualified" than Anderson and Currie, and ignored probative evidence of pretext. He emphasizes that although "a showing that a plaintiff is 'clearly better qualified' is one way of demonstrating that the employer's explanation is a pretext, it is not the only way" and that "[p]retext may be shown by any evidence which demonstrate[s] the employer's proffered reason is false." *Burrell*, 482 F.3d at 412 n.11. We consider in turn Lawson's arguments regarding Excel's promotion and termination decisions.

The district court correctly held that Lawson failed to rebut Excel's legitimate, nondiscriminatory reasons for promoting Anderson. As an initial matter, Lawson was not clearly the better qualified candidate. Lawson had been in the industry longer than Anderson, but both candidates met Excel's minimum competency requirements. Moreover, Anderson was more senior than Lawson within Excel, as he started working at Ron Williams Construction several years before Lawson. These are legitimate business reasons for promoting Anderson over Lawson. And when conducting the pretext analysis, this court does not "engage in second-guessing of an employer's business decisions." *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Even setting aside the issue of qualifications, however, Lawson still cannot show pretext. Lawson says he fell behind on closing out the Firestone contract while out on leave. But record evidence shows that he was already struggling to keep up before his leave. In his deposition, Lawson testified that before his leave he had to "work[] at home on nights and weekends working on these [Firestone] packages without any compensation at all because [he] had been so snowed under with no help." Lawson also faults the district court for crediting an affidavit submitted by Barry Carpenter, who was Excel's QA/QC Director. Allegedly, the affidavit lacks credibility because it contains a "sea of material factual misstatements." But Lawson himself acknowledges that "[c]redibility determinations are not part of the summary judgment analysis." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Thus, although Carpenter's affidavit gets a few dates and times wrong, the district court was nonetheless entitled to rely on it. At bottom, Lawson has not proffered any competent summary judgment evidence to show that Excel's legitimate, non-discriminatory reasons for not promoting him were pretextual.

Lawson also failed to show a genuine dispute of material fact regarding Excel's decision to terminate him but not Anderson or Currie was pretextual. He argues that (1) Excel had no reason to terminate him during its downsizing, particularly while it retained Anderson and Currie; (2) Excel did not consider his untimely completion of the Firestone closeout paperwork when it decided to terminate him; (3) Excel placed Currie on the Juniper project when it could have selected him; and (4) Excel hired a new QA/QC Inspector who was fifteen years younger than him in March 2018. Additionally, Lawson identifies as evidence of pretext an alleged statement of Anderson, expressing regret that Excel was "cut[ting] the inspection division because it was so shorthanded."

These arguments are unavailing. To begin, by the time Excel terminated Lawson, Anderson was his supervisor. This difference in rank dooms any claim Lawson may bring based on Anderson's retention. For this reason, Lawson focuses his arguments on Currie. Those arguments also fail. Lawson's primary contentions concern Excel's reduction in force around the New Year. Lawson does not dispute that Excel was downsizing, but he says that it unlawfully selected him for termination based on his age. Evidence shows, however, that Lawson's billable work had been declining for months—he had zero billable hours in January 2018. Although Currie's billable hours also slowed in January, he did bill some hours that month. Moreover, Excel had included Currie's resume in connection with part of the proposed Juniper planning project, which it had not yet heard back from. Lawson says that Excel could have considered him for the Juniper planning project, but he ignores that Excel did include his resume in its bid for the more substantial Juniper construction project, which Excel lost. Lawson is correct that Excel hired a QA/QC Inspector in March 2018 who was younger than Lawson. But it did so only after Anderson and Currie unexpectedly quit. And there is no evidence that, despite being eligible for rehire following his termination, Lawson applied for that position before Excel made a hiring decision.

Finally, Lawson argues that Anderson's statement that his division was shorthanded "suggests that Excel maintained sufficient work in the inspection division at the time of [his] discharge to justify retaining him." Excel argues that this statement is inadmissible hearsay because Anderson was not deposed and did not submit an affidavit in this case. Rather, Lawson testified in his deposition that Anderson made the statement. Lawson responds that the statement falls within an exception to the hearsay rule. However, even if Anderson's statement were admissible, it remains

undisputed that hours were down in the division and that Lawson had zero billable hours in January 2018. Anderson thus cannot show pretext.

### B. Disability Discrimination

The *McDonnell Douglas* burden shifting framework also applies to Lawson's ADA claim. *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). Here, the district court never reached the burden shifting analysis because it concluded that Lawson failed to make a prima facie case of discrimination. Specifically, the district court concluded that Lawson's heart problems did not render him disabled under the ADA. Before this court, Lawson asserts that he is disabled under the ADA because he has an actual disability, was regarded as having a disability by Excel, and has a longstanding record of being disabled. Lawson bases his disability claim on his hypertension and coronary artery blockage.

Under the ADA, employers cannot discriminate against "a qualified individual on the basis of a disability in regard to . . . [the] discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To succeed on an ADA claim, a plaintiff must show that he (1) has a "disability"; (2) was "qualified" for the position; and (3) suffered an adverse employment decision "solely because of his disability." *Atkins v. Salazar*, 677 F.3d 667, 675 (5th Cir. 2011) (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (per curiam)). "An individual has a disability under the [ADA] if he or she (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment, or (3) is regarded as having such impairment." *Atkins*, 677 F.3d at 675 (quotation omitted).

The district court correctly concluded that Lawson is not disabled under the ADA. First, Lawson does not have a "physical or mental

impairment that substantially limits one or more major life activities." *Id.* Lawson notes that the ADA defines "major life activities" to include "the operation of a major bodily function, including but not limited to, functions of the . . . circulatory [system]." 42 U.S.C. § 12102(2)(B). But Lawson offers no evidence showing that his heart condition "substantially limits" the function of his circulatory system. In fact, his cardiologist opined that he was "pretty much normal" for someone of his age and mobility. For the same reason, Lawson has not identified any evidence establishing a record of a disability. And although Lawson says his employer regarded him as disabled, Excel cleared him to work without restriction. To be sure, Excel assigned Lawson to desk work when he returned, which Lawson says was because Excel did not feel comfortable with him "climbing." But as described above, Excel had independent reasons to assign him to desk work. Specifically, Lawson needed to finish closing out the Firestone contract. At any rate, even assuming Lawson had established a prima facie case of discrimination, his ADA claim would fail under the *McDonnell Douglas* burden shifting analysis. As previously explained, Lawson cannot show a genuine dispute of material fact necessary to rebut Excel's nondiscriminatory reasons for failing to promote and subsequently terminating him.

### C. Leave Retaliation

Finally, Lawson brought a claim for FMLA retaliation.[1] Allegedly, Excel's decisions to promote Anderson over Lawson and to subsequently terminate Lawson were at least partially in response to Lawson's need to take leave. Like Lawson's other indirect-evidence claims, "[r]etaliation claims for exercising FMLA rights are subject to the *McDonnell Douglas* burden-shifting

---

[1] In the operative complaint, Lawson also brought an FMLA interference claim, which the district court dismissed. But Lawson did not brief the FMLA interference claim and later clarified that he is "not proceeding with an FMLA interference claim" on appeal.

framework." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020). To make a prima facie case of retaliation, a plaintiff must show that "(1) 'he was protected under the FMLA;' (2) 'he suffered an adverse employment action;' and (3) 'he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.'" *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527 (5th Cir. 2021) (quoting *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006)). Satisfying the "final element requires proof of a causal link." *Campos*, 10 F.4th at 527.

The district court rejected Lawson's retaliation claim because (1) he failed to show a genuine dispute of material facts that Excel would not have fired him "but for" engaging in activity protected under the FMLA and (2) Lawson failed to show a genuine dispute of material fact that Excel's nondiscriminatory reasons for terminating him were pretextual. On appeal, Lawson argues that the district court applied the wrong causation standard to his FMLA retaliation claim, causing it to erroneously rule his prima facie case insufficient. But even if Lawson had established a prima facie case of FMLA retaliation, he would still be required to show a genuine dispute of material fact under *McDonnell Douglas* that Excel's nonretaliatory reasons for failing to promote and subsequently terminating him were pretextual. As previously stated, that he cannot do. Thus, we need not further consider his argument regarding the causal link. *See id.* at 520 ("We may affirm a summary judgment on any ground supported by the record . . . ."). It follows that Lawson's retaliation claim also fails.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court.