# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 11, 2011

No. 10-10197

Lyle W. Cayce
Clerk

KEVIN M. EHRINGER ENTERPRISES, INC., doing business as Data Center
Systems,

Plaintiff - Appellee

v.

MCDATA SERVICES CORP., formerly known as Computer Network
Technology Corporation,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY and HAYNES, Circuit Judges, and RODRIGUEZ,[*] District Judge.

HAYNES, Circuit Judge:

McData Services Corporation, formerly known as Computer Network Technology Corporation ("McData"), appeals the district court's judgment on a jury verdict in favor of Kevin M. Ehringer Enterprises, Inc., doing business as Data Center Systems ("Ehringer"), in Ehringer's suit for breach of contract and fraudulent inducement. McData argues that the district court erred in denying its motion for judgment as a matter of law because: (a) partial performance under the parties' contract (the "Agreement") negates the "no intent to perform"

---

[*] District Judge of the Western District of Texas, sitting by designation.

element of fraudulent inducement by false promise; (b) the phrase "best efforts" has no definite meaning, and Ehringer presented insufficient evidence that McData had "no intent to perform" under the "best efforts" provision of the contract; (c) Ehringer failed to prove that McData had an "intent to deceive"; (d) Ehringer's recovery is subject to the limitation-of-remedies clause in the Agreement that bars recovery of lost profits; and (e) the damages award was not supported by sufficient evidence.  Because we find that Ehringer failed to present sufficient evidence that McData had no intent to perform under the "best efforts" provision of the contract and failed to present any evidence of damages on its other claim, we REVERSE and REMAND to the district court to enter judgment in favor of McData and do not reach the other issues.

## I.  FACTS AND PROCEDURAL HISTORY

McData is a technology company that sells data centers.  In 2003, McData acquired InRange, a competitor.  As a result, it acquired two product lines known as fiber management systems ("FMS") and intelligent fiber systems ("IFS").  FMS and IFS (collectively, the "Products") are both cables that connect devices in a data center.  After McData and InRange merged, McData decided to sell some of InRange's product lines, including the Products, as it wanted to focus on its core business.

McData located Ehringer, a company that was willing to purchase the Products.  Ehringer had the technical ability to produce the Products, but it wanted to enter into a strategic agreement with McData because McData had access to customers.  Ehringer and McData entered into negotiations about the purchase, finally reaching an agreement on November 13, 2003.  The Agreement provided that Ehringer would pay McData a 25% royalty on sales of the Products for a three-year period.  Once Ehringer paid a total of $1 million in royalties, McData would transfer title to Ehringer.  However, Ehringer would continue to pay a 25% royalty until the end of the three-year period.  In return, McData

No. 10-10197

promised to give Ehringer reasonable access to its customers; to use its "best efforts" to promote, market, and sell the Products during the Agreement's three-year term; to respond promptly to all inquiries from customers; to permit Ehringer to visit McData's customers and place of business; and to permit Ehringer to inspect relevant documents.  McData also promised not to "develop, produce, distribute, or market products that are competitive with existing [Ehringer] products" and not to "buy or sell products in North America which directly compete with the Products."  Additionally, the Agreement limited the parties' liability, providing that "in no event, regardless of the form of the cause of action, will either party be liable for any claim made against it by any party, or for any claim by the other party or its customers for lost profits . . . or for any other direct, indirect, special, incidental, or consequential damages . . . ."

Approximately twelve months after the parties entered into the Agreement, Ehringer paid McData $1 million in royalties, and McData transferred title to the Products to Ehringer.  However, in 2006, Ehringer sued McData for breach of contract and fraudulent inducement, alleging that McData breached the contract by: competing with the Products; failing to use its best efforts to promote, market, and sell the Products; and failing to provide access to McData's records and customer lists.  Ehringer also alleged that McData fraudulently induced it to enter into the contract because McData never intended to use its "best efforts" and never intended to be bound by the non-competition provision.

The parties agreed that Minnesota law governed the breach of contract claim and Texas law governed the fraudulent inducement claim.  The district court granted summary judgment in favor of McData on Ehringer's breach of contract claim, concluding that the limitation-of-remedies clause prevented Ehringer from recovering lost profits, which were the only damages Ehringer sought for the breach.  The district judge allowed the fraudulent inducement

No. 10-10197

claim to proceed to a jury trial, concluding that the limitation-of-remedies clause did not bar Ehringer's fraudulent inducement claim.

At trial, McData's CEO testified that he never intended "that the McData sales and marketing force would become dedicated to promoting, marketing, and selling the FMS and IFS product lines." Additionally, Ehringer presented expert testimony that McData was finalizing the development of an allegedly competing product—the 2900—just days before the parties signed the Agreement. Ehringer introduced several McData PowerPoint presentations which it contends indicate that McData viewed the 2900 as competing with IFS and FMS technology.[1]

Before the case was submitted to the jury, McData filed a motion for judgment as a matter of law, arguing that Ehringer: (1) presented no evidence that McData intended to deceive Ehringer; (2) presented no evidence that McData had no intent to comply with the "best efforts" provision because that term was too indefinite to be enforceable; (3) could not recover because of the limitation-of-remedies clause in the contract; and (4) failed to present sufficient evidence of its damages. The judge denied the motion. The jury subsequently found for Ehringer on the liability questions and found $12.53 million in damages.

McData renewed its motion for judgment as a matter of law and, in the alternative, moved for a new trial. The district court denied the motion and entered a final judgment on the jury verdict (together with pre-judgment and post-judgment interest) on February 25, 2010. McData timely appealed.

---

[1] The parties dispute whether the 2900 was competitive with or complementary to the Ehringer product.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court has jurisdiction over this diversity case under 28 U.S.C. § 1332.  McData is a citizen of Texas and Ehringer is a citizen of Minnesota, and Ehringer sought damages of over $75,000.  We have jurisdiction to review the final judgment of the district court pursuant to 28 U.S.C. § 1291.

We review denials of motions for judgment as a matter of law under Federal Rule of Civil Procedure 50 de novo, applying the same standard as the district court.  *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 481 (5th Cir. 2008).  Under Rule 50(a), the court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  FED. R. CIV. P. 50(a).  A Rule 50(a) motion is a challenge to the legal sufficiency of the evidence.  *See id.*; *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008).  This court may review a denial of a motion for judgment as a matter of law under Rule 50(a) if the party re-raises its motion after the jury's verdict.  *Downey v. Strain*, 510 F.3d 534, 543 (5th Cir. 2007).  McData did so.

In resolving a motion for judgment as a matter of law, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).  This court "cannot reverse a denial of a motion for judgment as a matter of law unless . . . the legal conclusions implied from the jury's verdict cannot in law be supported by those findings."  *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004).

## III.  DISCUSSION

To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud: (1) a material misrepresentation; (2) that

is false; (3) when the defendant made the representation, the defendant knew it was false or made the statement without any knowledge of its truth; (4) the defendant intended the plaintiff to rely on the representation, and the plaintiff actually relied on the representation; and (5) the defendant's actions caused an injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Fraudulent inducement also requires proof of an underlying contract which was induced. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). In this case, Ehringer does not contend that McData made a false representation about a present fact; rather, it contends that McData's promise to do an act in the future was fraudulent because McData never intended to perform according to that promise. "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Here, the alleged false promise was the contract itself.

Texas has recognized that, where the damages claimed are (as here) economic loss to the subject of the contract itself, the remedy ordinarily is one of contract alone. *Formosa Plastics*, 960 S.W.2d at 45. Texas courts have long been reluctant to hold a party liable in tort if the action should only be characterized as a breach of a contract. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 306 (Tex. 2006) ("We recognize the need to keep tort law from overwhelming contract law, so that private agreements are not subject to readjustment by judges and juries."). In *Formosa Plastics*, 960 S.W.2d at 45, however, the court concluded that a claim for fraudulent inducement was not barred merely because the damages could be categorized as "economic loss to the subject of the contract." The court concluded that "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Id.*

No. 10-10197

However, as McData points out, mere failure to perform contractual obligations as promised does not constitute fraud but is instead a breach of contract. *Spoljaric*, 708 S.W.2d at 435. To be actionable as fraudulent inducement, a breach must be coupled with a showing that the promisor never intended to perform under the contract. *Spoljaric*, 708 S.W.2d at 434; *see also Tony Gullo Motors I*, 212 S.W.3d at 306.

McData argues that since "best efforts" has no precise meaning either in the Agreement or under the law, Ehringer cannot prove that McData had no intent to perform or, more specifically, there is nothing by which to measure the breach and lack of intent to perform. It argues that "to form the basis of a claim for fraudulent inducement, a contract term must be definite, specific, and unconditional."

With respect to this issue, the parties disagree about whether Texas or Minnesota law applies to the court's interpretation of the "best efforts" provision. However, as Texas law applies to Ehringer's fraud claim, we use Texas law to determine whether the "best efforts" term is sufficiently definite to serve as a benchmark for analyzing McData's intent at the time it entered into the Agreement.[2]

The Texas Supreme Court has not analyzed the term "best efforts" to determine its meaning in a contract; therefore, under *Erie Co. v. Tompkins*, 304 U.S. 64 (1938), we look to decisions from the intermediate Texas appellate courts to determine the likely outcome. *First Nat'l Bank of Durant v. Trans Terra Corp.*, 142 F.3d 802, 809 (5th Cir. 1998). We have recognized that *CKB & Associates, Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577 (Tex.

---

[2] Importantly, while Minnesota law of "best efforts" is not as fully developed as Texas law on this subject, neither party has shown that the outcome would be different if Minnesota law were applied to this question. *See Hininger v. Case Corp.*, 23 F.3d 124, 126 (5th Cir. 1994) (explaining that, where all potentially applicable states' laws do not differ in material respect, the claimed conflict is a "false conflict").

App.—Dallas 1991, writ denied), is instructive on the issue of how to interpret a "best efforts" clause in a contract in Texas. *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 559 (5th Cir. 2002); *see also Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 722 (5th Cir. 2004) ("A prior panel opinion's interpretation of state law binds us no less firmly than a prior panel interpretation of federal law would.").

In *CKB & Associates*, the court noted that "[b]est efforts is a nebulous standard. Under some circumstances, a party could use best efforts to achieve a contractual goal and fall well short. Under different circumstances, an effort well short of one's best may suffice to hit a target." *CKB & Assoc.*, 809 S.W.2d at 581. Therefore, the court determined that "to be enforceable, a best efforts contract must set some kind of goal or guideline against which best efforts may be measured." *Id.* If the contract sets out such goal or guideline, "[a] contracting party that performs within the guidelines fulfills the contract regardless of the quality of its efforts. When a party misses the guidelines, courts measure the quality of its efforts by circumstances of the case . . . and by comparing the party's performance with that of an average, prudent, comparable [party]." *Id.* at 582 (citations omitted).

In interpreting *CKB & Associates*, we have held that the term "goal" or "guideline" need not be read narrowly. *See Herrmann Holdings Ltd.*, 302 F.3d at 559. In *Herrmann Holdings*, the contractual language at issue stated that a party was to "use its reasonable best efforts to prepare, file and cause to become effective, as promptly as practicable . . . the Registration Statement . . . ." *Id.* at 556. We concluded that the phrase "as promptly as practicable" was an objective goal making the "best efforts" clause enforceable. *Id.* at 559-60. Therefore, we held that the plaintiff could pursue a claim for breach of this clause. *Id.* at 561.

We acknowledge that both *CKB & Associates* and *Herrmann Holdings* were breach of contract cases and do not resolve whether a party can bring a

No. 10-10197

fraud claim based on failure to comply with a "best efforts" provision. One unpublished Texas appellate decision allowed liability for fraudulent inducement based on a "best efforts" clause in a contract, however that case involved a standard in the contract by which the best efforts could be objectively measured. *See Finesse Custom Homes, Inc. v. Jacks*, No. 04-98-00607-CV, 1999 Tex. App. LEXIS 5339, at \*3, \*7 (Tex. App.—San Antonio July 21, 1999, no pet.) (unpublished) (defendant promised "to do his best to get [the plaintiff] paid within five days of the next stage's completion").

While these cases make clear that "best efforts" provisions may be enforceable under Texas law if they provide some kind of objective goal or guideline against which performance is to be measured, no Texas case has addressed whether a party can pursue a fraudulent inducement claim based on a promisor's intent not to perform under a provision that has no objective measure.

Based on the absence of case law directly on point, we use the *CKB & Associates* best efforts analysis as a yardstick for analyzing the fraudulent inducement claim. The "best efforts" provision in the Agreement required McData to use its

> best efforts to: (i) further the promotion, marketing, licensing, and sale of Products; (ii) maintain an adequate inventory of sales literature; (iii) respond promptly to all inquiries from customers; (iv) permit Ehringer to visit McData's customers and to visit McData's place of business and inspect its relevant documents upon reasonable notice; and (v) participate and exploit Product capabilities at industry trade events. McData shall provide Ehringer with a list of events applicable to the Products that McData participate [sic] in and shall engage Ehringer in local McData events.

Ehringer claimed that McData never intended to comply with the first and fifth clauses of the "best efforts" provision.

9

No. 10-10197

Unlike *Herrmann Holdings*, where the court found that "as promptly as practicable" was an enforceable guideline, 302 F.3d at 556, the first clause of the "best efforts" provision in this case does not provide a goal or guideline by which McData can be expected to measure its progress. Therefore, the requirement that McData use its "best efforts to further the promotion, marketing, licensing, and sale of Products" is not enforceable under Texas law. *See CKB & Assoc.*, 809 S.W.2d at 581 (noting that a "best efforts" clause is not enforceable unless it has a guideline by which to measure performance). The provision requiring McData to use its best efforts to "participate and exploit Product capabilities at industry trade events" is similarly indefinite and also unenforceable. *See id.* Even applying the only objective guideline by which to measure the "best efforts" clause—the requirement that McData would transfer the patents to Ehringer when Ehringer met the $1 million royalty mark—Ehringer would not prevail. If we were to use this guideline, it is undisputed that McData met—and even exceeded—the parties' expectations, as it aided Ehringer in meeting this guideline six months before the parties anticipated it would occur.

Because the "best efforts" clause is too indefinite and vague to provide a basis for enforcement, the claim for fraudulent inducement, as a matter of law, cannot rest on the alleged breach of this clause coupled with an alleged intent not to perform. Accordingly, this issue should not have been submitted to the jury.[3]

---

[3] Additionally, even assuming Ehringer could bring such a claim, Ehringer failed to present sufficient evidence to support a finding that McData never intended to perform under this provision. For example, as support for its position, Ehringer presented testimony from McData's corporate representative that McData did not have any obligation to introduce Ehringer to a single customer. However, this testimony merely reflects McData's interpretation of the contract; McData never denied that the promise was made. *Compare Spoljaric*, 708 S.W.2d at 435 (noting that denial that a promise was ever made supports a finding of fraudulent intent), *with Hearthshire Bareswood Plaza Limited Partnership v. Bill Kelly Co.*, 849 S.W.2d 380, 389 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (disagreement about the meaning of a contract is insufficient to support a finding that the

No. 10-10197

Ehringer also alleged that McData fraudulently induced it to enter into the contract by promising that it would not compete with the Products. Even assuming that there was evidence to support this contention, Ehringer presented no evidence of damages associated with McData's failure to comply with this provision. Ehringer's damages evidence was entirely centered around McData's alleged failure to perform under the "best efforts" provision which, as we explained above, could not support a claim of fraudulent inducement. Indeed, at oral argument, Ehringer's attorney asserted that the damages from this alleged "non-competition fraud" were based entirely on the alleged denial of "access to customers," which is simply a back door to the "best efforts" damages. In the absence of damages from this alleged fraud, the claim cannot stand. *MGE UPS Sys. Inc. v. GE Consumer & Indus. Inc.*, 622 F.3d 361, 368 (5th Cir. 2010) (applying Texas law). Here, Ehringer failed to prove an injury as a result of McData's failure to comply with the non-competition provision other than as a "back door" to the best efforts argument we have already rejected.

## IV. CONCLUSION

Because we reverse Ehringer's claims related to the "best efforts" provision and find that Ehringer failed to present evidence of damages on its claim related to the non-competition provision, we REVERSE and REMAND to the district court to render judgment in favor of McData.

---

promisor fraudulently induced the promisee to enter into the contract).

The only other evidence supporting Ehringer's argument that McData never intended to comply with the "best efforts" provision is Ehringer's CEO's testimony that McData refused to provide access to its customer list, claiming that the information was "confidential." However, McData's refusal to provide the list occurred in 2004, *after* McData had provided Ehringer with a partial customer list. McData's later decision not to comply with the contract (as Ehringer interpreted it) cannot support a finding that McData never intended to perform under the contract.