# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2023

Lyle W. Cayce
Clerk

No. 22-30297

———

Anastasia Nedd Allen,

*Plaintiff—Appellant*,

*versus*

United States Postal Service, Louis DeJoy, Postmaster General,

*Defendant—Appellee*.

———

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-304

———

Before Barksdale, Southwick, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Plaintiff-appellant Anastasia Nedd Allen brings claims of age discrimination and retaliation against her former employer, the United States Postal Service ("USPS"). The district court granted summary judgment to USPS on all of Allen's claims. Allen now appeals. For the following reasons, we AFFIRM in part and REVERSE and REMAND in part.

No. 22-30297

## I.

In April of 2018, USPS hired Allen as a "city carrier assistant" subject to a ninety-day probationary period.  At all relevant times, Allen was either fifty-three or fifty-four years old.  Allen was assigned to the North Central Carrier Station ("Central Station") in New Orleans.  In July, before her probationary period lapsed, station manager Joseph Porche fired her.  In August, Allen initiated Equal Employment Opportunity ("EEO") contact regarding her termination.  She alleged that USPS fired her because of her age, marital status, and disability, and also alleged a hostile work environment.[1]  In November, Allen and USPS resolved the complaint in a written settlement, pursuant to which Allen would be reinstated as a carrier assistant.  Allen asserts that she asked Porche not to put her on another probationary period, and Porche replied that "he does not like to hire older workers because they tend to get hurt and go on restriction until they retire."  According to Allen, Porche said that "he did not need another carrier with restrictions on his clock."  On December 8, 2018, Allen began her reinstated position at Central Station, subject to a renewed ninety-day probationary period.

The facts and circumstances of Allen's second period of employment are disputed.  USPS submitted summary-judgment evidence that Allen was "inefficien[t]," "result[ing] in expanded street time and delayed mail, which cost the USPS additional money."  An employee evaluation form indicated that, as of January 7, 2019—thirty days into Allen's renewed probationary period—Allen's performance was "unacceptable" in three of the six areas subject to evaluation: work quantity, work quality, and dependability.  Her

---

[1] The summary-judgment record does not contain Allen's 2018 EEO complaint, but USPS does not dispute that these claims formed the basis of the complaint.

performance was "satisfactory" in the areas of work relations, work methods, and personal conduct. At the sixty-day mark, Allen's performance was deemed "unacceptable" in all six areas. According to a declaration by her supervisor, Charlotte Lagrue, Allen's "deficiencies include[d] poor scanning, clock ring errors, and delaying the delivery of mail." Lagrue also attested that Allen "gets distracted and forgets important items that she needs to complete her task[s]," including her scanner. According to USPS, Allen "was not receptive to feedback." She "was advised of her deficiencies during her probationary period[,] and her work did not improve."

Allen's summary-judgment evidence tells a different story. Her most substantial piece of evidence is her own twelve-page affidavit, in which she asserts that her USPS supervisors generally undermined her efforts to succeed in her reinstated position. She writes specifically that "Porche and Lagrue set [her] up to fail so Porche could terminate [her] for poor performance."

Allen includes specific factual allegations supporting her version of events. She attests that Lagrue instructed her to "clock in daily to the street time code upon [her] arrival at work," which forced her to "perform office duties while on street time," thus creating "the appearance of expanded street times." Further, according to Allen, the "[d]elayed mail was due to Supervisor Lagrue hiding mail from [her] and not giving [her] an arrow key to open mail receptacles on [her] route." Allen also attests that Lagrue "refused to let [her] sort . . . and prepare [her] mail for delivery . . . before leaving the station." According to Allen, another carrier sorted her mail, "so it was often mis-sorted." "Dealing with missorted mail added to [her] street time and resulted in delayed mail." Allen also states in her affidavit that Porche and Lagrue "altered [her] clock rings to reflect street time rather than actual office time." She attests that Porche and Lagrue would hide mail and parcels from her before she left on her route, and then would call her back,

claiming that she had left mail and parcels. According to Allen, she did not, as Lagrue says, leave her scanner in the building. Allen says that her scanner was "taken by someone" when she went to the restroom, and she could not leave to deliver mail until she received another scanner.

Allen also attests to specific remarks made by Porche and Lagrue. In addition to her claim that in November 2018 Porche said he disfavors hiring older workers, Allen asserts in her affidavit that, when Porche would give her instructions, "he would always end the conversation by stating 'this is not a setup' with a smirk on his face." Allen also states that, at some unspecified time, Lagrue told her to "get [her] old ass back to work."

Allen's affidavit also contains assertions that her supervisors treated her less favorably than they treated a younger carrier, Chloe Bickman, by not allowing Allen to sort mail on her routes, to work a consistent route, or to be off on Saturdays. Allen further asserts that Bickman "never got auxiliary mail in addition to the daily mail for her route," while Allen "got auxiliary mail on a daily basis." She states that Bickman "was assigned easier mail routes to cover." She asserts that she, unlike Bickman, "was given more than three bundles of mail on a walking route," was "denied an arrow key when needed," and "was not given a voyager card or pin," and so "had to purchase gas for the mail truck with [her] own credit card."

On January 6, 2019, approximately one month into her reinstated employment, Allen initiated another informal EEO contact. She alleged that she was being targeted for age-based discrimination and retaliation for her prior EEO activity. Allen asked Glenn Webster, a shop steward for the National Association of Letter Carriers, to represent her in connection with the complaint.

Allen asserts that, on January 18, 2019, she attended a meeting at her own request with Porche and the shop steward from her first EEO complaint.

She says that she asked Porche to observe her as she delivered mail and performed other carrier duties, "to prove [she] did not have performance issues to him." Porche had not, according to Allen, observed her personally. Porche "agreed and said he would walk with [her] by the end of the week," but never did.

Allen also recounts an event occurring on January 30, 2019, writing that Lagrue did not give her the arrow key that she needed to access "collection boxes, outdoor parcel lockers, cluster boxes units, and apartment panels on [her] route." According to Allen, this resulted in her "having to bring back some mail to the station because [she] could not deliver it without the key." She further asserts that there were other times when Lagrue "did not provide [her] with an arrow key for routes that required it," and that Allen "asked for a key whenever the route required one." Allen says that "Lagrue would never give [her] the arrow key. She would say that she forgot, or she would not answer [Allen's] phone calls to remind her."

The arrow-key saga continued. Allen attests that on February 22, 2019, when she retrieved her keys for her mail truck, she "noticed that the arrow key was missing," and told Lagrue. Lagrue told Allen she would find an arrow key for her, but she "never looked for the key." According to Allen, she told Lagrue that she "needed to leave for the routes as [she] had two [routes] to cover that day." She says that while she was out on her routes, she called Lagrue three times for the arrow key, but Lagrue did not answer her calls. Accordingly, she "had no choice but to return the mail that required delivery with the arrow key." In Allen's words, "[t]his is another example of Lagrue setting [her] up to fail during [her] second probationary period."

With respect to her performance evaluations, Allen asserts in her affidavit that Lagrue listed inaccurate dates on the written form. As to the

thirty-day evaluation dated January 7, 2019, Allen states that no such evaluation happened on that day, and that it instead took place on January 26, 2019, on her forty-ninth—not thirtieth—day of work. She accordingly asserts that Lagrue backdated the evaluation form "to give the appearance that she conducted [Allen's] evaluation timely on the [thirtieth] day." In a similar vein, Allen asserts that her sixty-day evaluation—reportedly on February 6, 2019—in fact took place on February 16, 2019, and that the evaluation form was backdated in this respect as well. Given that the evaluations happened only twenty-one days apart, according to Allen, she did not have "sufficient time to get the proper training and improve [her] performance." Lagrue, in her declaration, denies backdating any of Allen's evaluations.

In addition to her own affidavit, Allen submitted the declaration of Glenn Webster, who, as Allen's representative in the EEO process, personally reviewed her entire complaint file. Webster states that Allen's file did not contain certain "documentation necessary to substantiate the termination of her employment during her second[] probationary period." He then lists six types of documents that were absent from Allen's file, including "PS Form(s) 4588 Observation of Work Practices" that would show that "Allen's work practices had been observed by her supervisors and found to be deficient;" a "PS Form 1813 Late Leaving Report" that would show that "Allen was using excessive time to deliver mail;" and a "PS Form 1017-A Time Disallowance Record" that would show that "Allen was extending her time on her mail delivery routes." Webster further states that Allen's file contained certain documentation that did *not* support her second termination on account of job performance, including her "Employees Everything Report," which "shows 'Clock Rings/Operations' being changed by management personnel daily," and "[d]ates on the PS Form 1750

Evaluation/Probation Report" that "conflict[] with actual evaluation dates."

USPS fired Allen on February 26, 2019. The letter of separation, signed by Porche, lists three reasons for Allen's separation: (1) "Failure to perform work which meets the expectations of the position," (2) "Fail[ure] to accomplish tasks in an efficient and timely manner," and (3) "Fail[ure] to work at a sufficient speed to keep up with the amount of work required by the position." In March of 2019, Allen filed a formal EEO complaint alleging that her second termination was based on age discrimination and retaliation for her prior EEO activity.

In addition to her claims based on her termination from her second probationary period at Central Station, Allen also brings claims based on three incidents of non-selection for hire at other USPS locations to which she applied. First, in February 2019, before her second termination, Allen interviewed with a USPS location in Metairie, Louisiana. Metairie Postmaster Matthew McFall attests in a declaration that Allen's interviewer, Chad Taylor, recommended her for hire. Allen states in her affidavit that, after her termination from Central Station, she called Taylor to ask whether she had been hired in Metairie. According to Allen, Taylor told her that Porche had said "unfavorable things" about her to McFall, and so McFall did not hire her. McFall denies speaking to Porche about Allen, and instead states that when personnel "processed" Allen, they learned that she had been terminated from the USPS.

Second, in April 2019, Allen interviewed for a position at a USPS location in Marrero, Louisiana. In May, Allen was informed that she was not hired. Allen asserts that Porche and Lagrue "gave false and misleading statements" to the Marrero Postmaster, Alisa Leonard, resulting in her non-selection for the Marrero position. Leonard admits in her declaration that

she spoke to Allen's previous manager and supervisor, *i.e.*, Porche and Lagrue, who told Leonard that Allen "was a difficult employee who challenged everything they would tell her." Leonard states that she was told that "when instructions would be given," Allen "would go straight to the union to verify if she had to follow the instruction." She says that her "decision not to hire [Allen] was based on the fact that she had been separated twice for unsatisfactory performance and the information [Leonard] received from [Allen's] previous [m]anager and [s]upervisor." Leonard denies basing her decision on Allen's age or EEO activity.

Third, Allen again applied and interviewed for a position at the Metairie station. Again, Chad Taylor recommended that she be hired. Though Allen was "initially selected for the position," she was notified on May 21, 2019 that the offer was rescinded. The next day, Allen met with Tracy Segura, a USPS field recruiter. Segura told Allen that she was the person who rescinded the job offer. The explanation for the recission is subject to dispute. Segura attests in a declaration that Allen's offer was rescinded because she had been separated twice from USPS. Allen, on the other hand, states in her affidavit that Segura told her that she rescinded the job offer because Allen was "at war with the post office due to [her] current EEO activity." Segura denies saying this and denies having knowledge of, or access to, Allen's EEO activity at the time of the recission. Allen also states that she had a conversation with McFall, the Metairie Postmaster, in May of 2019, and McFall told her that "he rescinded the job offer for the second Metairie job opening . . . due to [Allen's] EEO activity."

Allen amended her EEO complaint to include claims for age discrimination and EEO retaliation, arising out of her (1) first non-selection for the Metairie position, (2) non-selection for the Marrero position, and (3) second non-selection for the Metairie position.

No. 22-30297

On October 30, 2019, in a final agency decision, USPS dismissed all of Allen's claims of discrimination and advised her of her right to file a civil action. On January 28, 2020, Allen filed suit in the U.S. District Court for the Eastern District of Louisiana. USPS moved for summary judgment on all claims, and the district court granted the motion in full. The court dismissed as procedurally barred all of Allen's claims pertaining to her first EEO complaint in 2018. The district court also dismissed the eight claims presented by Allen's second EEO complaint: (1) age discrimination as to (i) her second termination from Central Station, (ii) her first non-hiring at the Metairie station, (iii) her non-hiring at the Marrero station, and (iv) her second non-hiring at the Metairie station; as well as (2) retaliation for her prior EEO activity as to (i) her second termination from Central Station, (ii) her first non-hiring at the Metairie station, (iii) her non-hiring at the Marrero station, and (iv) her second non-hiring at the Metairie station.

The district court entered final judgment in favor of USPS, and Allen timely appealed.

## II.

Allen does not specify in her briefing before us which dismissals by the district court she appeals. However, not all of her claims are adequately briefed, and failure to brief an issue on appeal constitutes waiver of the issue. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 952 F.3d 708, 711 n.3 (5th Cir. 2020); *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). We accordingly conclude that Allen has abandoned multiple claims on appeal. First, she does not mention the district court's dismissal of her claims pertaining to her first EEO complaint in 2018. Second, she fails to brief the district court's dismissal of her claims arising from her non-selection for hire at the Marrero station. Third, while she makes various references to her first interview and subsequent non-hiring at

the Metairie station, she does not provide arguments or legal citations contesting the district court's dismissal of her claims arising out of this non-hiring. She instead dedicates her Metairie-related briefing to the contention that the May 2019 recission of her offer, *i.e.*, the second non-hiring, was retaliatory. Finally, Allen's briefing on her second non-hiring at the Metairie station is confined to her retaliation theory; she does not discuss the Metairie station vis-à-vis her age-discrimination claims. Allen has therefore abandoned all of these claims. The district court's dismissal of these claims is affirmed.

This leaves three claims on appeal: (1) age discrimination as to her second termination from Central Station; (2) retaliation as to her second termination from Central Station; and (3) retaliation as to her second non-hiring at the Metairie station.

### III.

We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmovant. *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 616 (5th Cir. 2020) (citations omitted). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this assessment, the court "may not make credibility determinations or weigh the evidence." *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).

No. 22-30297

We first address Allen's age-discrimination claim and then turn to her retaliation claims.

**IV.**

The Age Discrimination in Employment Act ("ADEA") prohibits employers from firing, refusing to hire, or otherwise discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her age. 29 U.S.C. § 623(a)(1). Under the Act's federal-employee provision, which covers the U.S. Postal Service, "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." *Id.* § 633a(a). This provision "demands that personnel actions be untainted by *any* consideration of age." *Babb v. Wilkie*, 140 S. Ct. 1168, 1171 (2020) (emphasis added). We generally assess ADEA age-discrimination claims relying on circumstantial evidence under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

To establish her prima facie case of age discrimination, Allen must show that (1) she was discharged, (2) she was qualified for the position,

---

[2] In *Babb v. Wilkie*, the Supreme Court held that federal-employee ADEA claims under § 633a(a) do not require a showing of but-for causation. 140 S. Ct. at 1171. At least one federal court of appeals has interpreted *Babb* as having "foreclosed using the full *McDonnell Douglas* framework regarding ADEA claims . . . as to federal-sector employees." *Lewis v. Sec'y of U.S. Air Force*, No. 20-12463, 2022 WL 2377164, at *10 (11th Cir. June 30, 2022); *see Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1204 (11th Cir. 2021) ("Without quite saying as much, . . . it seems that the Supreme Court accepted Babb's argument 'that the District Court should not have used the *McDonnell Douglas* framework.'"). The parties before us have not cited the Supreme Court's decision in *Babb*, and both parties embrace the *McDonnell Douglas* framework. Because we conclude that Allen's claim survives summary judgment even under the more demanding *McDonnell Douglas* framework, we do not decide the extent to which *Babb* renders *McDonnell Douglas* an inappropriate means of analyzing § 633a(a) claims.

11

(3) she was within the protected class when she was discharged, and (4) she was "either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age." *Id.* (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

If Allen succeeds on her prima facie showing, the burden shifts to USPS to articulate a legitimate, nondiscriminatory reason for Allen's termination. *Id.* If USPS does so, the burden shifts back to Allen to show that the articulated reason is pretextual. *Id.* She may show pretext "either through evidence of disparate treatment" or by showing that USPS's "proffered explanation is false or 'unworthy of credence.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). A plaintiff's "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (quoting *Reeves*, 530 U.S. at 147-48).

We conclude that there are issues of fact precluding summary judgment for USPS on Allen's age-discrimination claim. As to Allen's second termination from Central Station, we agree with the district court that Allen has carried her burden to show that she was within the protected class, was discharged, and was qualified for her position. USPS does not dispute these findings on appeal.[3]

But we disagree with the district court's conclusion that Allen failed on her prima facie showing by not submitting evidence that she was

---

[3] In the district court, USPS disputed Allen's qualifications for the position, but the district court properly found that Allen need only show that she meets "objective hiring criteria." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001). On appeal, USPS does not argue that Allen fails the qualification requirement of her prima facie case.

discharged because of her age. Allen asserts in her affidavit that she was treated less favorably than a twenty-six-year-old younger carrier assistant, Chloe Bickman. She provides a series of examples in support of this claim, including that Bickman was given many privileges that Allen was denied. Allen also points to two age-related remarks from her superiors at USPS. She attests that upon reinstating her, Porche said that he does not like to hire older workers because they "tend to get hurt and go on restriction until they retire." Porche said that he "did not need another carrier with restrictions on his clock." Allen also attests that Lagrue once told her to get her "old ass" back to work.

We begin with Allen's comparison to Chloe Bickman. To qualify as "similarly situated" for the purpose of an employment-discrimination claim, the employees being compared must have the same job or responsibilities, share the same supervisor or have their employment status determined by the same person, and have comparable violation histories. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citations omitted). The district court found that Allen could not rely on a comparison to Bickman because Allen failed to identify Bickman's age, supervisor, violation history, or whether she was also a probationary employee. But the record contains this information. Specifically, the final agency decision on Allen's EEO complaint notes that Chloe Bickman was twenty-six years old, and that she, like Allen, was a probationary[4] city carrier assistant at Central Station in New

---

[4] The record support for the fact that Bickman was a probationary employee is USPS's recounting of Allen's own assertion. But USPS has not contradicted this fact in either its final agency decision or as a party to this appeal. (USPS says in its brief that Allen has "failed to establish" that Bickman was a probationary employee, but this statement ignores the agency decision in the record and conspicuously stops short of denying that Bickman was probationary.) We therefore find that at this stage, this undisputed assertion in the record is sufficient to create a fact issue as to Bickman's probationary status.

Orleans, supervised by Charlotte Lagrue. Allen and Bickman thus had the same job, at the same location, under the same supervisor. As to similar violation histories, the agency decision states that there was "no indication that Ms. Bickman engaged in the same misconduct or subpar performance as [Allen]." But while Bickman may indeed lack a history of misconduct, at this stage the summary-judgment record precludes a dispositive finding that her violation history is different from Allen's, as Allen has submitted sworn statements contradicting the very "misconduct" and "subpar performance" with which she is charged. To discard the Bickman comparison on the basis of Allen's and Bickman's divergent "violation histories" is to credit USPS's account of Allen's employment, while discrediting Allen's own. This is impermissible at the summary-judgment stage. *Kevin M. Ehringer Enters.*, 646 F.3d at 325.

Allen's prima facie showing finds further support in her evidence of age-related comments by Porche and Lagrue. Workplace remarks offered not as direct evidence but as "circumstantial evidence alongside other alleged discriminatory conduct" must satisfy a "more flexible" two-part test.[5] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). Under this test, the plaintiff must show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* (citations omitted). Here, Allen's evidence of Porche's and Lagrue's

---

[5] We often describe this test as "more flexible" because it is less stringent than our other "stray remarks" test, which applies to employer remarks offered as *direct* evidence of discrimination. *See Goudeau*, 793 F.3d at 475. Age-related remarks offered as direct evidence of discrimination must "be proximate in time to the terminations, made by an individual with authority over the employment decision, and related to the challenged decision." *Id.* (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)). Allen does not offer Porche's and Lagrue's comments as evidence of direct discrimination.

remarks is "just one ingredient in the overall evidentiary mix," *Goudeau*, 793 F.3d at 475, so the remarks are subject to the flexible two-part test.

Porche's comment that he does not like hiring older workers satisfies this test.  First, the remark creates an issue of fact as to Porche's discriminatory animus, as it reflects a "desire to replace older employees with younger ones." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 458 (5th Cir. 2019).  Second, it is undisputed that Porche is the person "primarily responsible" for Allen's termination. *Reed*, 701 F.3d at 441.

Similarly, Lagrue's instruction to Allen that she get her "old ass" back to work also satisfies the two-part test.  First, the remark "references age in a derogatory or stereotypical way," and thus creates a fact issue as to Lagrue's discriminatory animus. *McMichael*, 934 F.3d at 458.  Second, while Lagrue was not the person who fired Allen, she qualifies as a person with "influence or leverage over the official decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).  Lagrue was Allen's supervisor and is the person who conducted Allen's performance evaluations.  She is no "ordinary coworker" lacking influence over Allen's employment status. *See id.*

Accordingly, Allen's evidence of (1) Porche's comment, (2) Lagrue's comment, and (3) unfavorable treatment compared to Bickman, collectively create genuine disputes of fact material to Allen's prima facie showing on her age-discrimination claim.  The burden therefore shifts to USPS to articulate a nondiscriminatory reason for Allen's termination.  USPS has done so: it says that Allen was fired for poor job performance.

The burden thus shifts back to Allen to show that the proffered reason was pretext.  She may do so by showing that USPS's explanation is "false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578.  Here, too, issues of

material fact preclude summary judgment for USPS. Most significantly, Allen's twelve-page affidavit, sworn to under penalty of perjury, contains extensive factual assertions supporting her contention that USPS made it impossible for her to succeed upon her reinstatement at Central Station. The uniting theme of her affidavit is that "Porche and Lagrue set [her] up to fail so Porche could terminate [her] for poor performance." This is a direct challenge to USPS's proffered explanation.

In the affidavit, Allen details multiple specific incidents suggesting, at best, innocence of poor performance and, at worst, sabotage. Notably, none of these facts was discussed by the district court. Allen states that her expanded street times owe to Lagrue's instruction that she clock into street time even when working in the office, and to her supervisors' altering of her clock rings to reflect street time rather than office time. She states that supervisors hid mail from her and then summoned her back, claiming that she had left mail behind, that they assigned her different routes, making it difficult for her to learn and deliver one route, and that Lagrue repeatedly denied her an arrow key necessary to complete certain deliveries, causing her to return to the station with undelivered mail. These facts, if ultimately found credible at trial, would permit a reasonable factfinder to conclude that USPS's proffered explanation for Allen's termination is false or unworthy of credence.

Additionally, Webster's declaration further undermines USPS's proffered reason. According to his personal review of Allen's file, multiple forms that would have documented Allen's performance deficiencies were absent. And the documents that he did find in the file tend to support Allen's version of events, including a report showing that Allen's clock rings were changed by management daily. The district court did not give proper weight to Webster's declaration, noting that it "merely delineates [Webster's] personal observations about how Allen's noted deficiencies might have been

better documented." But a lack of documentation of Allen's purported job deficiencies is germane to Allen's theory of pretext in this case: that management's claims of poor performance were artificial. *See McMichael*, 934 F.3d at 459 ("A plaintiff can also show pretext by showing a departure from standard procedure."). Notably, USPS offers no explanation for the dearth of documentation noted in the Webster declaration. A reasonable factfinder could rely on Webster's declaration in support of a finding that USPS's stated reasons for Allen's termination were pretextual.

Finally, we hold that application of the "same actor" inference in favor of USPS is not appropriate under these facts. The district court, at USPS's urging, reasoned that Allen's effort to show pretext is undermined by the fact that Porche—the person responsible for firing her—was also the person who hired her. This may seem a straightforward application of our case law, under which, "when the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff," there arises "an inference that discrimination was not the motive behind plaintiff's termination." *Russell*, 235 F.3d at 228 n.16 (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)). This inference rests on the proposition that it is "irrational" to suspect that "animus exists in termination but not in hiring." *Brown*, 82 F.3d at 658 (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)). "From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job." *Id.* (cleaned up) (quoting *Proud*, 945 F.2d at 797).

But application of the "same actor" inference here does not comport with the rationale beneath the inference. While it is true that Porche was the person who re-hired Allen,[6] he did so pursuant to a settlement of her EEO

---

[6] The parties do not point to record evidence indicating whether it was Porche who initially hired Allen at USPS in April 2018. The district court based its "same actor"

complaint, which itself arose out of his having previously fired her. Allen's re-hiring thus does not reflect a presumptive absence of animus on Porche's part. On the contrary, animus in Allen's termination is consistent with animus in what was, according to Allen, not an arms-length hire but instead a begrudging re-hire effectuated to settle a discrimination complaint. *Cf. Fitzpatrick v. Pontotoc Cnty.*, 612 F. App'x 770, 776 n.5 (5th Cir. 2015) (noting in an age-discrimination case that "[t]he same actor inference likely does not apply" to an employer's decision to retain an employee, rather than a decision to hire him).

For these reasons, USPS has failed to demonstrate that there are no genuine disputes of material fact. Summary judgment was not appropriate on Allen's age-discrimination claim as to her February 2019 termination from USPS. The order of the district court is reversed in this respect.

## V.

We next consider Allen's claims that she was subject to retaliation for her prior EEO activity. The Supreme Court has held that the federal-employee provision of the ADEA "prohibits retaliation against a federal employee who complains of age discrimination." *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (citing 29 U.S.C. § 633a(a)). "[R]etaliation claims under the ADEA also utilize a burden-shifting analysis at the summary-judgment stage, starting with the prima facie case."[7] *Heggemeier v. Caldwell*

---

inference on Allen's *re*-hiring by Porche in November 2018. USPS sticks to this approach on appeal. We therefore do not consider the effect of the same-actor inference on a scenario in which Porche was also the initial hiring official.

[7] As noted *supra* note 2, the Supreme Court held in *Babb* that federal-sector ADEA claims under § 633a(a) do not require a showing of but-for causation, and at least one circuit has read *Babb* to foreclose use of the *McDonnell Douglas* framework for such claims. *Lewis*, 2022 WL 2377164, at *10; *Babb*, 992 F.3d at 1204. As *Babb* was concerned only with age-discrimination claims, not retaliation claims, *see* 140 S. Ct. at 1171, it may fairly be said that

*Cnty.*, 826 F.3d 861, 869 (5th Cir. 2016) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

To make her prima facie showing on her ADEA retaliation claim, Allen must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, (3) there is a causal link between the protected activity and the adverse employment action, and (4) she was qualified for the position. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496-97 (5th Cir. 2015) (citing *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001)).

## A.

We begin with Allen's retaliation claim vis-à-vis her second termination from Central Station. The only element of Allen's prima facie case at dispute on appeal is her showing that there was a causal link between her protected activity and her discharge.

The district court found that Allen could not establish causation based on timing alone. We agree that the approximately six-month gap between Allen's initial EEO contact in August of 2018 and her termination in February 2019 is too long to support Allen's prima facie showing. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (noting that the

---

*Babb* casts no doubt on the use of *McDonnell Douglas* for retaliation claims. But federal-employee ADEA claims based on retaliation derive from the same statutory provision as those for age discrimination. *Gomez-Perez*, 553 U.S. at 479 (holding that "the statutory phrase 'discrimination based on age'" in § 633a(a) "includes retaliation based on the filing of an age discrimination complaint"). Accordingly, the post-*Babb* viability of *McDonnell Douglas* with respect to federal-employee ADEA retaliation claims remains an open question. But again, because the parties here have not briefed the issue and instead embrace *McDonnell Douglas*, and because Allen's evidence suffices to withstand summary judgment even under *McDonnell Douglas*, we need not decide the precise effect of *Babb* in this case.

temporal proximity must be "very close" and citing with approval cases rejecting three-month and four-month periods as insufficiently proximate).

But Allen also initiated EEO contact on January 6, 2019, approximately seven weeks before her termination, complaining of age discrimination. This too is protected ADEA activity. *See Gomez-Perez*, 553 U.S. at 491. And as the district court acknowledged, this timing is sufficiently close to meet Allen's causation burden at the prima facie stage. *See, e.g.*, *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (accepting a two-and-a-half-month period as sufficient for causation at the prima facie stage); *Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282, 287 (5th Cir. 2012) (finding that a "less than two-month span between the protected activity and the adverse action is sufficient 'temporal proximity' for a prima facie showing of causation."). But the district court then erred by concluding that Allen had "not produced any evidence" that Porche had knowledge of this renewed contact. Allen had indeed produced such evidence, and again, it is contained in her affidavit. Allen attests that, "[b]ased on [her] understanding of the USPS's handling of EEO complaints, [her] complaint EEO ADR Specialist, Cabrini Hales[,] then contacted Porche, Lagrue, and [Bianca] Martin to see if there could be a resolution via redress if possible." Viewing the evidence most favorably to Allen as the nonmovant, this sworn assertion creates a genuine dispute of material fact as to whether Porche was aware of Allen's January EEO contact by the time he fired her in February.[8] We therefore conclude that Allen has created a genuine dispute of material fact as to whether her renewed EEO contact is

---

[8] Contrary to the district court's finding, Porche's declaration stating that he knew of Allen's 2018 complaint does not somehow defeat this fact issue. Porche does not mention—much less deny knowledge of—Allen's 2019 complaint.

causally linked to her termination weeks later. She has thus made her prima facie showing for the purposes of withstanding summary judgment.

Again, USPS proffers Allen's poor job performance as its nondiscriminatory reason for her termination, and again Allen must demonstrate that this reason is pretextual. We have already concluded, in assessing Allen's age-discrimination claim, that Allen's evidence creates a fact issue as to whether USPS's proffered reason for her termination is pretextual. Specifically, Allen has submitted evidence that her supervisors set her up for failure by obstructing her efforts to succeed at her job, including by hiding her mail, making her clock into street time when she was in fact in the office, and denying her the tools necessary for her deliveries. Moreover, Allen has submitted evidence, via Webster's declaration, that USPS did not document the performance deficiencies it relies on as the basis for Allen's termination. And again, the circumstances of Porche's "hiring" of Allen render inappropriate the "same actor" inference. A reasonable jury could find, based on this evidence, that USPS's reason for terminating Allen was pretext for retaliation based on her EEO activity directed against the USPS.

Summary judgment for USPS was inappropriate on this claim, and the judgment of the district court is reversed in this respect.

B.

Finally, we turn to Allen's retaliation claim as to the May 2019 recission of her offer at the Metairie Post Office. We find that material factual disputes preclude summary judgment on this claim as well. Allen asserts in her affidavit that McFall told her that "he rescinded the job offer for the second Metairie job opening . . . due to [her] EEO activity." Similarly, Allen states that USPS field recruiter Tracy Segura told her that the offer was rescinded because Allen was "at war with the post office due to [her] current EEO activity." Because Allen's affidavit testimony about

Segura's and McFall's remarks constitutes direct evidence of retaliation, we need not proceed through the *McDonnell Douglas* burden-shifting framework. *See Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993) ("Direct evidence is evidence which, if believed, proves the fact without inference or presumption."); *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." (citation omitted)).  A reasonable jury could, based on this evidence, find that Allen's offer for the Metairie station was rescinded in retaliation for her protected EEO activity directed against USPS.

We therefore reverse summary judgment as to this claim.

## VI.

The judgment of the district court is AFFIRMED in part and REVERSED in part.  Summary judgment is reversed as to Allen's age-discrimination and retaliation claims arising out of her February 26, 2019 termination from USPS Central Station, as well as her retaliation claim arising out of the May 2019 recission of her job offer at the Metairie USPS station.  Dismissal of all other claims is affirmed.

We REMAND for further proceedings consistent with this opinion.